NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2098
_____

UNITED STATES OF AMERICA

v.

JOSEPH VAS,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cr-00370-001)
District Judge:  Honorable Susan D. Wigenton

_____

Submitted Under Third Circuit LAR 34.1(a)
September 18, 2012

Before: SLOVITER, RENDELL, and HARDIMAN, Circuit Judges

(Filed: September 20, 2012)

_____

OPINION
_____

SLOVITER, *Circuit Judge*.

Appellant Joseph Vas was convicted of mail fraud, misapplication of funds involving a local government receiving federal funds, making false statements to federal law enforcement agents, and making contributions to a federal candidate through straw donors.

**I.**

At the times relevant to the criminal charges at issue, Vas was the Mayor of Perth Amboy, New Jersey, a New Jersey State Assemblyman, and a candidate in the 2006 Democratic primary election for New Jersey's 13th U.S. Congressional District. Melvin Ramos, Vas' co-defendant, was Vas' Mayoral Aide and Congressional Campaign Treasurer. Vas and Ramos were charged with, and convicted of, two interrelated sets of offenses. First, Vas and Ramos were convicted of a set of charges involving the abuse of Vas' authority as Mayor to misappropriate public funds in order to entice a contractor to buy an apartment building in Perth Amboy from Vas at an inflated price.[1] Second, Vas and Ramos were convicted of charges related to the use of straw donors to evade contribution limits to Vas' congressional campaign (the "straw-donor scheme").

Vas purchased an apartment building on Dekalb Avenue in Perth Amboy (the "DeKalb property"); held it for a brief period; and sold it to Evan Samouhos, a developer,

---

[1] In keeping with the practice of the parties and the District Court, we will refer to these counts collectively as the "property-flip scheme."

for $290,000 in profit.[2]  Samouhos bought the property on assurances from Vas and Ramos that he would receive Regional Contribution Agreement ("RCA") funds to renovate the building.[3]  Vas used part of the profit from the sale of the DeKalb property to fund his congressional campaign.  After the sale, Vas, without disclosing his prior ownership of the property, manipulated municipal procedures in an attempt to expedite the approval of $360,000 in RCA funds for the rehabilitation of the DeKalb property.  Among other actions Vas took in this regard was misusing his authority to obtain a $90,000 advance payment of RCA funds to the developer outside of the municipal approval process for such a payment.  Vas subsequently made false statements to FBI agents about his involvement with the DeKalb property.

The jury also convicted Vas of Count Twelve, which charged him with accepting campaign contributions through straw donors, in violation of 2 U.S.C. §§ 441a(f) and

---

[2] The Government refers to the following counts as part of the property-flip scheme: Counts One through Four, which charged specific instances of mail fraud in violation of 18 U.S.C. § 1341, and on which the jury returned a verdict of not guilty; Counts Five and Six which charged mail fraud in violation of 18 U.S.C. § 1341; Count Seven charging fraud and intentional misapplication of funds involving a local government receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A); and Count Eight charging Vas with making false statements about the property-flip scheme to federal law enforcement agents in violation of 18 U.S.C. § 1001(a)(2).

[3] RCA funds are municipal funds available through a New Jersey state program enabling municipalities to share funds for the development of low and moderate income housing.  That program was administered by the New Jersey Council on Affordable Housing, the state agency responsible for monitoring municipal affordable housing obligations.

437g(d)(1)(A)(ii).[4]  In this scheme, city employees and other persons made donations to Vas' congressional campaign and were then reimbursed with cash received from other donors.

Following his convictions, the District Court sentenced Vas to 78 months imprisonment, a fine of $73,200, and restitution of $90,000.

Vas filed a timely notice of appeal.

## II.

Vas makes numerous arguments on appeal.  First, he argues that the jury's verdicts on various counts were against the weight of the evidence and that the District Court erred in failing to grant a judgment of acquittal on those charges.  Second, Vas contends that his due process rights were violated by the Government's misjoinder of the property-flip counts and the straw-donor count and by the District Court's refusal to sever them. Vas next argues that he is entitled to a new trial because the District Court improperly admitted evidence of other wrongful acts in violation of Federal Rule of Evidence 404(b). Finally, Vas challenges the District Court's sentencing guidelines calculation and its imposition of $90,000 in restitution to the City of Perth Amboy.

## A.

Vas argues that the jury's verdicts on the various counts were against the weight of the evidence and that the District Court erred by denying his Rule 33 motion for a new

---

[4] Vas was not charged on Counts Nine through Eleven, which charged only co-defendant Ramos.

trial. This court reviews a district court's denial of a motion for a new trial under Rule 33 for abuse of discretion. *See United States v. Kelly*, 539 F.3d 172, 181 (3d Cir. 2008). Where, as here, a defendant's Rule 33 motion is premised on the argument that the jury's verdict was against the weight of the evidence, the task of the district court is not to "view the evidence favorably to the Government, but instead [to exercise] its own judgment in assessing the Government's case." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *Id*.

Vas bases many of his sufficiency of the evidence challenges on purported inconsistencies in testimony that he believes made witnesses Evan Samouhos, Jeffrey Gumbs, FBI Special Agent Edward Quinn, Raymond Geneske, and David Benyola not credible. We reject these arguments.

The determination of witness credibility is the province of jury. *See Brennan*, 326 F.3d at 191. After a careful review of the record, we agree with the District Court that, while the testimony of the Government's witnesses contained minor inconsistencies and weaknesses – all of which were the subject of extensive cross examination by defense counsel – the overall testimony was "very consistent with what the allegations stated in the indictment." Supp. App. at 417-18. Moreover, the challenged testimony was

5

supported by considerable documentary evidence as well as by the testimony of other witnesses whose credibility is not challenged on appeal.

Vas makes two additional arguments that the Government failed to produce any credible evidence supporting the property-flip counts. These arguments are easily rejected.

First, Vas argues that he had a good faith belief that he was acting lawfully with regard to the property-flip scheme. This contention is contradicted by the record. First, Kathleen McGlinchy, a state official, testified that she told Vas in advance that some of his proposed actions were improper under state regulations. Second, Vas' non-disclosures, acts of concealment, and subsequent false statements to the FBI are all circumstantial evidence from which the jury could have inferred that Vas knew his actions were unlawful and acted with fraudulent intent. *See United States v. Pearlstein*, 576 F.2d 531, 541 (3d Cir. 1978).

Vas makes a related argument that the Government failed to show that he made material false statements. In Vas' view, the Government only proved that Vas failed to disclose certain facts, without producing evidence that Vas was under an affirmative obligation to make any disclosures. Here again Vas' contention is contradicted by the record. The Government produced evidence showing that Vas engaged in affirmative acts to conceal his interest in the DeKalb property, including, for example, evidence that Vas went outside the normal channels for approval of Government payments and had third parties make requests with respect to RCA funding for the DeKalb property in order

6

to disguise his interest. This evidence is sufficient to support his convictions on the challenged counts. *See, e.g.*, *United States v. Olatunji*, 872 F.2d 1161, 1167 (3d Cir. 1989).

In sum, we reject the suggestion that there was a miscarriage of justice, and hold that the District Court did not abuse its discretion in denying Vas' motion for a new trial.

## B.

Vas, using the same arguments made in support of his motion for a new trial, asks this court to reverse the District Court's denial of his motion for a judgment of acquittal on Counts Five, Six, Seven, Eight, and Twelve of the superseding indictment. "We exercise plenary review over a district court's grant or denial of a motion for judgment of acquittal based on sufficiency of the evidence." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009). That review "is governed by strict principles of deference to a jury's findings." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996) (internal quotation marks and citation omitted). We will overturn a verdict only "if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006) (quoting *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)).

For the same reasons we rejected Vas' argument that he was entitled to a new trial, we conclude that the Government presented evidence sufficient to sustain Vas' convictions on the challenged counts.

## C.

Vas next argues that the superseding indictment improperly joined the property-flip counts and the straw-donor counts and that the District Court erred by declining to sever the straw-donor counts.

We make an "independent determination" as to whether the joinder of counts was proper. *United States v. McGill*, 964 F.2d 222, 241 (3d Cir. 1992) (internal quotation marks and citation omitted). Our inquiry focuses on the facts alleged in the indictment, not upon the proofs made at trial. *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003). Under Rule 8(b), "[the] indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Under Rule 8(b), joinder of counts is proper if the indictment alleges a "transactional nexus" between the counts being joined. *McGill*, 964 F.2d at 241 (quoting *United States v. Eufrasio*, 935 F.2d 553, 570 n.20 (3d Cir. 1991)).

The transactional nexus requirement is easily met in this case. The superseding indictment alleges an overall scheme to fund Vas' campaign coffers, of which the property-flip scheme and the straw-donor scheme were parts. Specifically, the superseding indictment alleges that Vas used part of the profits from the sale of the DeKalb property to fund his congressional campaign. This allegation satisfies the transactional nexus requirement. *See, e.g.*, *id.* (approving joinder of bribery and tax

8

evasion counts where the Government alleged an overall "enrichment scheme" motivating both offenses).

Vas next contends that even if joinder of the counts was proper under Rule 8(b), the District Court should have exercised its discretion to sever the straw-donor counts under Rule 14. We review the denial of a motion to sever for abuse of discretion. *See Eufrasio*, 935 F.2d at 568. Even where a district court abuses its discretion, however, "we need reverse a conviction only if the appellant shows specifically that the denial caused . . . clear and substantial prejudice resulting in a manifestly unfair trial." *Id.* (internal emphasis, quotation marks, and citation omitted). It is not sufficient for a defendant to allege merely that severance would have improved his chances for acquittal. *See id.*

Vas' argument on appeal falls far short of showing the required prejudice. He argues generally that "[h]earing about the alleged wide-ranging lawlessness involved in the execution of both the real estate scheme and the separate and different campaign scheme, likely led the jury to brand the defendants as individuals with entrenched criminal propensities . . . ." Appellant's Br. at 56-57. Contrary to this argument, however, most if not all of the evidence related to the straw-donor count would have been admissible to show Vas' motive with respect to the property-flip scheme. *See Eufrasio*, 935 F.2d at 569 (holding that district court did not abuse its discretion in denying motion for severance where the allegedly prejudicial evidence would have been admissible in separate trials). Moreover, the District Court gave a careful limiting instruction, directing

9

the jury to consider the evidence on each count and against each defendant separately. *See United States v. Walker*, 657 F.3d 160, 171 (3d Cir. 2011) ("We presume that the jury followed those instructions, and thus we regard the instructions as persuasive evidence that refusals to sever did not prejudice the defendants." (internal quotation marks and citations omitted)). In sum, the record reveals no reason to believe that the jury would have been unable to compartmentalize the evidence as to the separate counts and separate defendants or that Vas suffered clear and substantial prejudice as a result of the District Court's refusal to sever. It follows that we will not reverse the District Court's denial of Vas' motion to sever.

D.

Vas argues that the District Court improperly admitted evidence of his prior crimes, wrongs, or acts in violation of Rule 404(b) of the Federal Rules of Evidence. Specifically, Vas takes issue, first, with the admission of Raymond Geneske's testimony that before the actions charged in the superseding indictment, Vas had promised RCA funds to another real estate developer, from whom Vas subsequently received a campaign contribution. Second, Vas challenges the admission of testimony by Jeffrey Gumbs relating to Gumbs' guilty pleas to three crimes in state court. During that testimony, Gumbs named Vas as a beneficiary of two of the crimes to which he pled guilty.

We review a district court's decision to admit evidence under Rule 404(b) for "abuse of discretion, which may be reversed only when clearly contrary to reason and not

10

justified by the evidence." *United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001) (internal quotation marks and citations omitted).

"Rule 404(b) is a rule of inclusion rather than exclusion." *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003). "[T]he purpose of Rule 404(b) is simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence. No other use of prior crimes or other bad acts is forbidden by the rule . . . ." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (internal emphasis, quotation marks and citations omitted). A proper purpose for the admission of evidence under Rule 404(b) includes "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Cross*, 308 F.3d 308, 319 (3d Cir. 2002) (quoting Fed. R. Evid. 404(b)). Even where a district court erred in admitting evidence, we will not reverse if the error was harmless. *Id.* at 326.

Our review of the record confirms that Geneske's testimony was relevant for proper purposes, including evidencing Vas' intent and knowledge with respect to the property-flip and straw-donor scheme, because it showed that Vas knew how to use promises of RCA funds to obtain benefits for himself. *See United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001) (affirming admission of evidence of prior bank robberies to show modus operandi of the charged offense). We note that this evidence was subject to vigorous cross examination by Vas' attorney and a thorough limiting instruction, both

11

of which mitigated the risk of unfair prejudice. *See id.* at 328. As such, we conclude that Geneske's testimony was relevant for proper purposes under Rule 404(b) and that the considerable probative value of that testimony was not substantially outweighed by the risk of unfair prejudice.

With regard to the testimony of Jeffrey Gumbs, Vas takes issue with the admission of Gumbs' statement that he pled guilty to charges related to "[u]sing city funds to pay for sports camp for my son and Mayor Joseph Vas' son." App. at 1394.[5] Even assuming that this statement was improperly admitted, we conclude that its admission was harmless. A non-constitutional error is harmless "if it is highly probable that the error did not contribute to the judgment." *Cross*, 308 F.3d at 326 (internal quotation marks and citation omitted).

It is highly probable that the admission of Gumbs' single statement about using city funds to pay for summer camp for Vas' son did not contribute to the judgment. First, the challenged testimony represents only a very small part of Gumbs' testimony at trial, and the Government did not refer to it in opening or summation. Second, the District Court gave a careful limiting instruction worded to cure any improper prejudice caused by Gumbs' statement. Specifically the District Court instructed the jury that "[y]ou are to

---

[5] In his Reply Brief, Vas contends additionally that the Government's admission of this evidence constituted unfair surprise in violation of a pre-trial agreement. However, we need not consider this argument because Vas failed to raise it clearly in his opening brief. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

draw no conclusions whatsoever about Mayor Vas' involvement [in the misappropriation of those city funds]." App. at 1403. We presume that the jury followed this instruction. *See Walker*, 657 F.3d at 171. Finally, we note that the Government's evidence in this case was strong, based on the largely consistent testimony of numerous witnesses and considerable documentary evidence. Accordingly, we conclude that any error the District Court made in admitting Gumbs' statement was harmless.

E.

At sentencing, the District Court applied a 12-level enhancement based on its finding that Vas was responsible for $90,000 in actual loss and $360,000 in intended loss to the City of Perth Amboy. The District Court ordered Vas to pay $90,000 in restitution to the City of Perth Amboy. Vas challenges both of these rulings on appeal, arguing that Perth Amboy actually received $90,000 worth of benefit because $90,000 worth of rehabilitation was conducted on low income housing at the DeKalb property. Vas argues further that there was no intended loss because the City would have received a full $360,000 worth of rehabilitation had the entire amount of funds been issued.

A district court's factual findings are reviewed for clear error. *See United States v. Dullum*, 560 F.3d 133, 140 (3d Cir. 2009). We review a district court's application of the Guidelines to the facts of a case for abuse of discretion. *See United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006).

Vas' arguments about loss miss the mark. Because of Vas' improper manipulation of the approval process, there is no way to know whether the City would have chosen to

13

spend its scarce resources on another project had the proper legal processes been followed. Because Vas deprived the City of the ability to decide what to do with its funds, Vas is in no position to argue that it received some incidental benefit from his misappropriation. *See United States v. De La Cruz*, 469 F.3d 1064, 1070 (7th Cir. 2006) ("A sidewalk might have some objective value, but that does not mean the citizens of East Chicago value it more than increased police protection or other improved city services. The value of losing this decision-making ability offsets any gain in sidewalks actually received."). We thus reject Vas' arguments about loss enhancement and the imposition of $90,000 in restitution.

## III.

In conclusion, we reject Vas' arguments and affirm the judgment and sentence of the District Court.

14